UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-21130-BLOOM/OTAZO-REYES

JOSE TELLERIA,

 Plaintiff,

vs.

AZTLAN FOODS, CORP.,
AND EVI, INC.

 Defendants.
_____/

**PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION ON MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS**

Plaintiff, Jose Telleria, by and through undersigned counsel, files this objection to United States Magistrate Judge Alicia M. Otazo-Reyes's Report and Recommendation (the "Report") to reduce his attorneys' fees and costs [ECF No. 64], and states the following:

## I.   INTRODUCTION

The Report reduces the fees and costs for Mr. Telleria's attorneys from a total requested amount of $20,547.50 to $11,208.07. Mr. Telleria objects to the following bases for reducing his attorneys' fees: (1) excessive and unecessary time spent by paralegal Shakira Brizuela on an excel spreadsheet; (2) a 40% reduction of the adjusted lodestar for Plaintiff's limited success in the matter; and, (3) a reduction in the rate of attorney Brian Pollock from $475.00 to $450.00 for 1.1 hours of tasks he performed.

### *I.*   *Excessive Time Spent on Excel Spreadsheet*

Mr. Telleria submitted a chronological billing invoice in support of his motion for attorney's fees and costs. [ECF No. 52-1]. The invoice shows that on June 28, 2022, paralegal

1

Shakira Brizuela spent four (4) hours working on a Microsoft Excel spreadsheet to calculate the damages owed to Mr. Telleria. The Report found Ms. Brizuela's time entry to be vague, redundant and unnecessary because "Plaintiff had already filed four different versions of the complaint and two statements of claims" by the time the spreadsheet was created. [ECF No. 64 at 7]. Mr. Telleria objects to this reduction in his attorney's fees because the spreadsheet was a necessary tool in preparing his case for litigation, it took that long to create the document, and it could not have been created before the statements of claim were filed.

As mentioned in Plaintiff's Reply Supporting Motion for Attorneys' Fees (the "Reply"), Mr. Telleria filed two statements of claim that were identical except the second one named different defendants in the caption. [ECF No. 55 at 5]. The Reply also emphasized that the "statements of claim were estimates calculated without the benefit of complete time records presumably in the Defendants' possession, which they never turned over in discovery as requested numerous times." *Id.* This is important because Mr. Telleria worked for Defendants since 2017 and made an overtime claim for 2019 to 2022. Mr. Telleria was not in possession of all of his time and pay records for those three years and had to estimate his claim based on how many overtime hours he thought he worked in the past. The only way to figure out the precise overtime that he worked was to obtain timesheets from the Defendants who are charged by law with keeping such records. Knowing the exact amount of overtime would facilitate a resolution with the Defendants, who consistently maintained that the statement of claim was overestimated. *See* Exhibit A, June 17, 2022 emails between Brian Pollock and Charles Eiss.

This Court required Mr. Telleria to file his statement of claim by May 5, 2022 [ECF No. 4], and it was filed on May 3, 2022 [ECF No. 6]. The amended statement of claim was filed on May 26, 2022 [ECF No. 23]. However, the Defendants did not provide any timesheets for Mr.

Telleria to review until June 8, 2022. *See* Exhibit B, Defendant's Initial Disclosures Pursuant to Rule 26. The time and pay records comprised 71 pages of daily time cards and biweekly paystubs that Ms. Brizuela had to sort through, extract data from, and then input into a spreadsheet. *See* Exhibit C, time and pay records produced by Defendants. Ms. Brizuela did not complete this task in one day, although her time entry is block-billed as one entry and not delineated in steps to allow the Court to see the process that resulted in the final spreadsheet. So, while Ms. Brizuela's time entry may be vague in its description of her activity, the task itself was not redundant or unnecessary because she could not have created the spreadsheet of Mr. Telleria's overtime hours until the time and pay records were received from the Defendant, which was after the second statement of claim was filed. However, it certainly took Ms. Brizuela at least four (4) hours over the course of several days to create the spreadsheet. Therefore, Plaintiff requests that 4 hours be added back into the adjusted lodestar in the paralegal category to increase the time to 30.3 hours at the rate of $125.00 an hour for a total of $3,787.50.

## II.    40% Adjustment Based on Limited Success Achieved in the Matter

The Report reduces the adjusted lodestar by 40% based on Mr. Telleria's alleged limited success in the matter. [ECF No. 64 at 8]. The Report characterizes Mr. Telleria's recovery as a limited success because the case settled for $22,500.00, but his statement of claim was for $47,760.00. *Id.*

However, as argued in Plaintiff's Reply, Mr. Telleria estimated he was owed $47,760.00 *including liquidated damages*. [ECF No. 55 at 5]. Plaintiff's unliquidated claim was for $23,880.00. Defendants' Rule 68 offer was for $20,101.00, and the case ultimately settled for $22,500.00, which amount is closer to the unliquidated statement of claim than the Rule 68 offer.

Mr. Telleria's Second Amended Complaint alleged one count of FLSA overtime wage violations, and three counts of retaliation under the FLSA and the Florida Civil Rights Act. [ECF No. 36]. The retaliation counts were based on the same allegation - that Mr. Telleria was unlawfully terminated for complaining that he did not receive overtime. Throughout the litigation, the Defendants maintained that they owed Mr. Telleria *some* overtime, but not as many hours as he claimed. *See* Exhibit A. Therefore, a large part of Plaintiff's counsel's efforts in the case were dedicated to obtaining complete time records for Mr. Telleria for 2019 to 2022, which were never produced. The complete time records were necessary to accurately determine how many overtime hours he worked. The Defendants also maintained that Mr. Telleria never worked for EVI, Inc. in an attempt to preclude joint liability. *See* [ECF No. 39 at ¶ 20], and Exhibit D, August 2022 email chain. Plaintiff's counsel also spent a significant amount of time attempting to establish that EVI, Inc. was in fact one of Mr. Telleria's employers.

And in response to the retaliation claim, the Defendants argued that Mr. Telleria was terminated due to his own bad acts, specifically failing to show up to work on a consistent basis, and that he resigned his employment by refusing to return to the position after it was offered to him. *See* [ECF No. 39 at ¶¶ 18-19]. Plaintiff's counsel was in the process of gathering information to dispute these contentions through obtaining complete time records and locating former employees of the Defendants as witnesses at the time the case settled.

All of the above issues were still extant leading up to the settlement conference, which took place on September 16, 2022, and highlighted in Plaintiff's mediation summary to United States Magistrate Judge Otazo-Reyes. *See* Exhibit E. The settlement conference resulted in an impasse, but prompted the Defendants to serve a Rule 68 Offer to Mr. Telleria four days later on September 20, 2022. It is important to note that Mr. Telleria's statement of claim estimated his overtime

damages at $18,000.00 and the retaliation claim at $5,880.00 for an unliquidated total of $23,880.00. That means that Mr. Telleria obtained the total amount of overtime he was seeking, which claim was disputed to some extent, and a portion of damages for retaliation, which claim the Defendants completely disputed. It was the diligent efforts of Plaintiff's counsel that prompted the Defendants to offer Mr. Telleria $20,101.00 in their Rule 68 offer, and then Plaintiff's counsel was able to gain an additional $2,399.00 in near satisfaction of all of his claims.

Plaintiff's counsel is confused as to why they are being punished for not obtaining Mr. Telleria's liquidated damages, which brought the statement of claim to $47,760.00. After attending many FLSA settlement conferences, undersigned counsel has consistently heard magistrate judges tell plaintiffs that they should not expect to receive liquidated damages in the resolution of their claims. In fact, plaintiffs are told that seeking liquidated damages only serves to hinder resolution because a fact-finder has to determine whether the employer acted in good faith, and it is generally too early in the litigation at the settlement conference stage to make that determination. As a result, it is the practice of undersigned counsel's law firm to advise clients that we will seek their liquidated damages, but they should not expect to receive them because they are only owed the wages they actually worked for.[1] Mr. Telleria was so instructed prior to the resolution of his case and he only expected to receive about $23,880.00.

The Report suggests that plaintiffs are forever bonded to the liquidated amount of money they request in their statements of claim. If that estimate is not recovered, then their attorneys will not be fully compensated for the diligent work done to recoup even the majority of money owed

---

[1] From a policy perspective, an order adopting the Report in this case could thwart future FLSA settlements because plaintiff's attorneys will have no incentive to encourage their clients to settle for the unliquidated amount of an FLSA claim.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

to the plaintiffs. This is unfair because FLSA plaintiffs are generally in the position of not having complete records of the time they worked to confront their employer with, and they cannot accurately estimate the amount they are owed at the time the statement of claim is prepared. Indeed, this Court recognized this phenomenon in its Order Denying Request for Extension in *Octavio Collado v. 450 North River Drive, LLC et al*, S.D. Fla. No.: 1:22-cv-23074-BLOOM, where it stated:

> As Plaintiff correctly notes, the purpose of the Statement of Claim at the outset of litigation in Fair Labor Standards Act cases is "so that the parties can evaluate the value of the claims asserted early in the case to determine whether to resolve the case before protracted litigation[.]" A perfectly accurate accounting is not necessary to achieve that goal. An estimate, based on the Plaintiff's best recollection as to the hours he worked and compensation he received, will suffice. As the Eleventh Circuit clarified in *Calderon v. Baker Concrete Const., Inc.*, the Statement of Claim "does not have the status of a pleading," so Plaintiff is not bound by the amount requested therein.

*Id.* at DE 9 (internal citations omitted). If plaintiffs are not bound by the amount requested in their statements of claim, then their attorneys should not be automatically penalized for obtaining less than the statement of claim when they attempt to collect their fees. In this situation, it cannot be said that Mr. Telleria's success was limited when he obtained 94% ($22,500/$23,880) of the unliquidated amount requested in his statement of claim.

The Report cites to *Brandt v. Magnificent Quality Florals Corp.*, No. 07-20129-CIV, 2011 WL 4625379 (S.D. Fla. Sept. 30, 2011) in support of reducing the fees for Mr. Telleria's attorneys. But *Brandt* involved a completely different factual scenario that probably warranted the 70% lodestar reduction of attorneys' fees. For starters, there were two plaintiffs in the case and one plaintiff was ultimately found to be owed no overtime wages at all. As a result, the court made significant reductions to the bills related to the second plaintiff. Second, the case went all the way to trial and

6

the court found that two plaintiff's attorneys were not necessary to try the case; so, one attorney's trial time was completely deducted. Third, the attorneys requested an amount of fees that could not be substantiated by their bills, and nearly $16,000.00 was deducted on that basis alone. Finally, the lodestar was reduced by 70% for the limited success achieved in the case because the statement of claim was for $56,160.00 (including liquidated damages), and the prevailing plaintiff obtained a judgment of $1,208.52 at trial. Significantly, the defendants made a Rule 68 offer for $8,000.00 (including attorneys' fees and costs) to the prevailing plaintiff nearly eight months before the trial. Therefore, the court stated "the amount recovered by [plaintiff] in unpaid overtime wages and liquidated damages equals little more than 2% of the amount of uncompensated overtime pay originally sought by him. In addition, the Court considers the fact that Plaintiff Brandt was offered a settlement that approximated what he ultimately obtained in overtime compensation and attorneys' fees and costs." *Id.* at \*12.

    Mr. Telleria's situation cannot be compared to *Brandt* at all. Mr. Telleria recovered far more money percentage-wise than the *Brandt* plaintiff. The unliquidated statement of claim in *Brandt* would have been $28,080.00, and so a recovery of $1,208.52 was only 4% of the amount sought. On the other hand, Mr. Telleria's unliquidated claim was for $23,880.00, and he recovered $22,500.00, which is 94% of the amount sought. Mr. Telleria did not extend litigation and go to trial after the Rule 68 offer. He essentially accepted the offer and his attorneys were still able to obtain an additional $2,399.00 from the Defendants. As mentioned in Plaintiff's Reply, Mr. Telleria accepted the Rule 68 offer because it was a reasonable amount of money to satisfy his claim. [ECF No. 55 at 5]. As such, Mr. Telleria's attorneys should be entitled to all of the fees they billed.

7

### **III.** **Brian Pollock deserves to be compensated at $475.00 an hour.**

Mr. Pollock billed the majority of the tasks he performed in the case at $450.00 an hour, but switched his hourly rate in all his open cases to $475.00 on the anniversary of his 23rd year practicing law in the Southern District of Florida. As mentioned in Plaintiff's Motion for an Award of Attorneys' Fees and Costs, Mr. Pollock began practicing in this district in 1999. [ECF No. 52 at 5]. Mr. Pollock's lengthy experience in the employment litigation field, and in FLSA cases in particular, should be taken into account to the extent that he adds value to his client's cases which results in efficient and effective outcomes. Indeed, courts in this circuit recognize that an attorney's reasonable rate is commensurate with the amount of time they have practiced in the field. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 355 (N.D. Ga. 1993) ("The use of current rates charged by the attorney properly accounts for inflation and delay in receipt of payment and is particularly applicable when legal services are performed within a two or three-year period."); *see also Eason v. Bridgewater & Assocs., Inc.*, 108 F. Supp. 3d 1358, 1365 (N.D. Ga. 2015). Although, Mr. Telleria's case did not span two or three years, the implication from *Domestic Air* is that an attorney's reasonable rate will increase during the life of a case because her experience is also simultaneously increasing. Therefore, Mr. Pollock should be allowed to bill a hybrid rate of $450.00 to reflect his historical rate, and $475.00 to reflect the current experience he brought to the case after his 23rd anniversary of practice.

In fact, Mr. Pollock's higher rate was already recognized in *Palacio Cruz v. Infante Sec. Prot., LLC*, 18-CV-21839-GAYLES/Otazo-Reyes at DE 17. The Report denies Mr. Pollock's higher rate because the fee award in *Palacio Cruz* was unopposed, however, that does not mean that his rate was unreasonable. The fact that the fee award was unopposed suggests that the opposing counsel, who presumably was also an attorney practicing in the employment field, also found Mr.

Pollock's rate to be reasonable. As such, Mr. Pollock's rate should be billed at $475.00 for 1.1 hours totaling $522.50 in this case.

Respectfully submitted on March 8, 2023.

*s/*Toussaint Cummings Esq.
Toussaint Cummings (119877)
toussaint@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
*Counsel for Plaintiff*
